# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAWUD WILSON, | ) | CASE NO. 1:18-cv-2032 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| LYNEAL WAINWRIGHT, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Dawud Wilson (Petitioner or Wilson), challenges the constitutionality of his convictions in the cases of *State v. Wilson*, Lake County Court of Common Pleas Case No. 15-CR-000326. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Lyneal Wainwright (Respondent) filed his Answer/Return of Writ. (R. 8). Petitioner has filed a Traverse (R. 14), to which Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED as procedurally defaulted.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Eleventh District Court of Appeals (state appellate court), on an appeal from a collateral post-conviction filing, summarized the facts underlying Petitioner's conviction as follows:[1]

[*P34] For his second assigned error, appellant contends:

[*P35] "The trial court erred to the prejudice of the defendant-appellant when it sentenced him to an additional and consecutive two years in prison for a repeat violent offender specification."

[*P36] Appellant argues the trial court erred in sentencing him for the RVO specification because, he contends, the record did not support one of the required findings for that specification.

[*P37] The Supreme Court of Ohio, in *State v. Marcum*, 146 Ohio St. 3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, held that when reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *Id*. at ¶1. Thus, applying the plain language of that statute, the Supreme Court held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id*. The Court further held that "appellate courts may not apply the abuse-of-discretion standard in sentencing term challenges." *Id*. at ¶10.

[*P38] R.C. 2929.14(B)(2)(b) sets forth the findings required for a trial court to sentence an offender for an RVO specification. That section provides, in pertinent part:

The court shall impose on an offender the longest prison term authorized * * * for the [underlying] offense and shall impose on the offender an additional definite prison term [for the RVO specification] of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:

---

[1] The court includes only those facts germane to the sole ground for relief raised by Petitioner—whether the guilt-finding as to the repeat violent offender (RVO) specification, to which Petitioner pled no contest, was the product of unconstitutional judicial fact-finding.

(i) The offender is convicted of * * * a specification * * * that the offender is a repeat violent offender.

(ii) The offender within the preceding twenty years has been convicted of * * * three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code [i.e., any felony of the first or second degree that is an offense of violence, such as aggravated robbery or robbery], including all offenses described in that division of which the offender is convicted * * * in the current prosecution and all offenses described in that division of which the offender previously has been convicted * * *, whether prosecuted together or separately.

(iii) The offense * * * of which the offender currently is convicted * * * is * * * any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved * * * a threat to cause serious physical harm to a person * * *. (Emphasis added.)

[*P43] Appellant concedes the record supports the first and second required findings for an RVO specification. Thus, he concedes that under the first required RVO finding, he was convicted of an RVO specification in this case. He also concedes that under the second required RVO finding, he was convicted of three counts of aggravated robbery in one case in Cuyahoga County in 2009; that he was convicted of aggravated robbery in an unrelated case in that county that same year; that he was sentenced concurrently in both cases to five years in prison; that he was released from prison in 2014; and that, within one year of his release, while he was on post-release control, he committed the instant bank robbery.

[*P44] The only RVO finding appellant argues was not supported by the record is the third finding, i.e., that the current robbery involved a threat to cause serious physical harm to a person. In response, the state argues the note appellant presented to the teller at the time of the robbery supported the court's finding that appellant threatened to cause her serious physical harm.

[*P45] "While a plea of guilty is a complete admission of the defendant's guilt, a plea of no contest is not an admission of guilt, but is an admission of the truth of the facts alleged in the indictment * * *. Crim.R. 11(B)(1) and (2)." *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 423, 1996- Ohio 93, 662 N.E.2d 370 (1996).

[*P46] The requirements regarding no contest pleas in misdemeanor cases are different from those in felony cases. While the trial court is required under R.C. 2937.07 to obtain an explanation of circumstances before accepting a no contest plea to a misdemeanor, Crim.R. 11 does not require an explanation of circumstances before the court accepts a no contest plea to a felony. *State v. Williams*, 8th Dist. Cuyahoga No. 103762, 2016-Ohio-7777, ¶5, citing *State v. Magnone*, 2d Dist. Clark No.2015-CA-94, 2016-Ohio-7100, ¶45, 72 N.E.3d

3

212. However, while not required, the trial court can ask for an explanation of circumstances before accepting a no contest plea to a felony. *Id.* at ¶8.

[*P47] The Supreme Court of Ohio has stated that "where the indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." *State v. Bird*, 81 Ohio St.3d 582, 584, 1998- Ohio 606, 692 N.E.2d 1013 (1998). An exception to this rule provides that when the trial court asks for an explanation of circumstances and that explanation negates the existence of an element of the offense, the trial court errs in finding the defendant guilty. *William*s, *supra*.

[*P48] Further, "by pleading no contest to the indictment," a defendant "is foreclosed from challenging the factual merits of the underlying charge." *Bird*, *supra*. The essence of the no contest plea is that the defendant cannot be heard in defense. *Mascio*, *supra*, at 424. "[T]he defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense." *Id*.

[*P49] Here, during the plea hearing, appellant told the court it was his intention to plead no contest to both the charge and the specification. He also said he was admitting the truth of the facts set forth in the indictment and the facts to be presented by the prosecutor

[*P50] After explaining the required findings for the RVO specification regarding appellant's prior and present convictions, the trial court advised appellant that there would also have to be a finding that he threatened to cause serious physical harm to the victim.

[*P51] Appellant said that he was voluntarily pleading no contest to robbery along with the RVO specification associated with that count and that he was asking the court to accept his plea.

[*P52] The court then asked the prosecutor for an explanation of circumstances. The prosecutor said that if the case had gone to trial, the evidence would have revealed that:

> On April 17, 2015, shortly before 1:00 P.M., the Buckeye State Credit Union * * * was robbed. The individual walked into the bank and handed a note to the teller. The note said,
>
> "1. Stay Calm. Don't raise your hands up or draw any attention.
>  2. I have a Loaded Gun on me.
>  3. Place All bills from the Drawer Onto the Counter.
>  4. I really don't want to hurt you, so Please:
> No Die (sic.) Packs, No Silent Alarms, No Bait

Money, No GPS."

In response to being provided that note the teller handed the individual * * * $1,972.

The individual then left [the] bank. Upon arrival of Lake County Deputy Sheriffs, the employees describe[d] the suspect as being six foot tall, weighing approximately 200 pounds, being a black male with a beard * * *. The deputies * * * sent out a be-on-the-look-out broadcast. Several police officers, including Deputy * * * Leonello and Patrolman * * * Krejsa * * * set up on I-90 westbound. Deputy Leonello observed a [vehicle] fitting the description being driven by a black male pass[ ] him. About the same time Officer Krejsa also noted the vehicle. The two of them then proceeded to conduct a traffic stop. The driver of the vehicle was identified as Dawud A. Wilson. And upon stopping the vehicle the contents inside the vehicle in plain view were consistent with the information taken from the scene. In plain view was a large amount of currency * * *. The currency itself was bait money provided by the bank. In addition, a * * * coat contained $1,972 * * * in the * * * pocket. * * * They also found a * * * bag, which contained a typed robbery demand [note] * * * on the floor of the vehicle * * *[.]

The following colloquy then took place between the court and appellant:

THE COURT: [T]he Prosecutor has summarized what the evidence was going to show in your particular case. You heard that, correct?

THE DEFENDANT: Yes, sir.

THE COURT: * * * Are you * * * admitting the truth of the facts that the Prosecutor has set forth here in open Court today? * * *

THE DEFENDANT: Yes.

* * *

THE COURT: [U]nderstanding the rights that you have, hearing now what the facts are and having reviewed the facts in the indictment, are you still admitting the truth of the facts by pleading no contest here today?

THE DEFENDANT: Yes, sir.

THE COURT: * * * [With respect to the RVO specification,] the court finds that * * * the Defendant has previously been convicted of offenses of violence, as noted in the repeat violent offender specification, also that the

5

crime[ ] to which he is pleading is, in fact, an offense of violence by statute. Three counts of aggravated robbery, felonies of the first degree, October 16th, 2009. Also aggravated robbery, a felony of the first degree[,] October 16th of 2009, both in the Cuyahoga County Court of Common Pleas. The Court also makes the finding that the Defendant did, in the commission of the crime here today, threaten to cause serious physical harm to a person, thereby triggering the RVO. All of that being said, the Court needs to have the Defendant review once again the written plea of no contest form, make sure you still want to enter that plea based upon the findings here today. * * * Sign the document only if you still want to plead no contest.

[DEFENSE COUNSEL]: Your Honor, Mr. Wilson has signed the written plea of no contest and I have signed it as well confirming that he has signed it. And I have discussed it and reviewed it with Mr. Wilson prior to Court as well.
* * *
THE COURT: * * * Finding the pleas to have been knowingly, intelligently, and voluntarily made, I will accept the no contest pleas that have both been made orally and in writing here in open Court today.
With the findings and the reasons previously stated by the Court, I will find the Defendant guilty of the crime of robbery in violation of 2911.02(A)(2) of the Revised Code, a felony of the second degree as set forth in Count 2 of the indictment. I will also find him guilty of the repeat violent offender specification associated with Count 2 of the indictment as well.

[*P78] A "threat" intimidates or causes the victim to be afraid. *Dayton v. Dunnigan*, 103 Ohio App.3d 67, 71, 658 N.E.2d 806 (2d Dist.1995). Further, a threat may be express or implied. *State v. Terzo*, 12th Dist. Butler No. 2002-08-194, 2003-Ohio-5983, ¶18.

[*P79] As indicated above, the robbery note appellant gave the teller said, "I have a Loaded Gun on me." The word "loaded" is in bold print, highlighted to stand out from the other type. Further, the note said, "I really don't want to hurt you, so Please: No Die (sic) Packs, No Silent Alarms, No Bait Money, No GPS." By pleading no contest and admitting he gave the teller a note saying he had a loaded gun and he would hurt her with it if necessary, appellant cannot dispute the note contained a threat that he would cause the teller serious physical harm if she did not comply with his demands.

[*P80] Appellant argues the note was not a threat because it said he did not want to hurt the teller. However, considering this phrase in context, he said that if she did not obey his instructions, he would hurt her.

[*P81] Further, appellant argues there was no evidence of a threat to cause serious physical harm because no evidence was presented that, during the robbery, he had

6

a gun on him. However, the statement in appellant's note that "I have a Loaded Gun on me" was direct evidence he had a gun.

[*P82] Based on appellant's no contest plea and his stipulation to the indictment and the explanation of circumstances, the record supports the trial court's finding that appellant threatened to cause serious physical harm.

[*P83] Appellant also makes an *Apprendi* argument, arguing the trial court erred in sentencing him on the RVO specification after making a factual finding that a jury did not find and he did not admit, in violation of his right to a jury trial, pursuant to *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E.2d 470. Appellant is again referring to the court's finding that he threatened to cause serious physical harm. However, appellant's argument lacks merit because he waived his right to a jury trial on this issue and he admitted all facts necessary to allow the court to find he was a repeat violent offender.

[*P84] Appellant concedes that he failed to raise an *Apprendi* argument in the trial court; that he thus waived it; and that this court is limited to reviewing this issue for plain error.

[*P85] In *State v. Hunter*, 123 Ohio St. 3d 164, 2009-Ohio-4147, 915 N.E.2d 292, the trial court designated the defendant as a repeat violent offender based on his stipulation that he had a prior conviction for felonious assault with a specification that he caused "physical harm" (as required by the former version of the RVO statute). Hunter argued he had a right to have the jury make those findings. However, the Court in *Hunter* held that the court did not violate his right to a jury trial because: (1) Hunter waived his right to a jury trial, and (2) he stipulated to the facts necessary for the RVO specification.

[*P86] First, with respect to waiver, Hunter's case was tried to a jury, but he waived his right to a jury trial on the RVO specification. After the jury found appellant guilty of felonious assault, the court held a bench trial on the specification. The Supreme Court held that because Hunter chose to submit the RVO determination to the trial court, he waived any right he had to have the jury make this finding. *Id.* at ¶31.

[*P87] Here, in pleading no contest to the specification, appellant waived his right to a jury on that issue and essentially asked the court to determine the specification based on his admission of the truth of the facts alleged in the indictment and contained in the prosecutor's statement of facts.

[*P88] Second, the *Hunter* Court held that since Hunter admitted all facts necessary for the court to designate him as a repeat violent offender, including that he caused physical harm to the victim, the trial court did not need to conduct fact-finding and no Sixth Amendment violation occurred. *I*d. at ¶33.

[*P89] The dissent maintains that, although appellant admitted the truth of the prosecutor's statement of facts regarding his current conviction, the trial court should not have accepted those facts in enhancing his sentence. While the Supreme Court in *Hunter* upheld the trial court's acceptance of the defendant's stipulation to the facts of his *prior conviction*, the dissent suggests *Hunter* does not apply here because appellant stipulated to the facts of his current conviction. However, nothing in *Hunter* suggests a trial court may not accept a defendant's stipulation to the facts of his current conviction. It is important to note that, while *judicial fact-finding* for sentence enhancement is expressly limited to the facts of a prior conviction, *stipulations* (which also obviate the need for a jury) are not. *Id.* at ¶29.

[*P90] This court, in *State v. Payne*, 11th Dist. Lake No. 2004-L-118, 2005-Ohio-7043, held that in order to be constitutionally permissible under *Apprendi*, *"any fact*, other than a prior conviction, must be determined by a jury or admitted by the appellant." (Emphasis added.) *Id.* at ¶114. Thus, any fact other than a prior conviction that is found by a jury *or admitted by the defendant* complies with *Apprendi*, regardless of whether it relates to a prior or current conviction.

[*P91] In *Payne*, this court said it was the trial court's findings as to the seriousness of the defendant's current conviction (per the former statute) that enhanced his sentence under the RVO specification, and these findings "should have been decided by a jury (if appellant did not admit them, which he did not)[.]" *Id.* at ¶116. Thus, this court implied that if a defendant admits the necessary findings regarding his current conviction, those findings need not be made by a jury.

[*P92] "'A stipulation, once entered into and * * * accepted by the court, is binding upon the parties and is a fact deemed adjudicated * * *.'" *State v. Carr*, 2d Dist. Montgomery No. 23826, 2010-Ohio-6470, ¶12, quoting 89 Ohio Jurisprudence 3d, Trial, Sec. 61. Thus, for RVO purposes, it makes no sense to draw a distinction between stipulations regarding the facts of a prior conviction and the facts of a current conviction. Once the defendant admits the facts recited by the prosecutor supporting a conviction, either prior or current, those facts are no longer in dispute. As the Court in *Hunter* said, where the defendant stipulates "to all the facts necessary for the trial court to designate him as a repeat violent offender," "the trial court ha[s] no need to conduct fact-finding * * * and no Sixth Amendment violation occurred * * *." *Hunter* at ¶32-33. That is exactly what happened here.

[*P93] The dissent's reliance on this court's decision in *Payne, supra,* in which this court held that the trial court violated *Apprendi*, is misplaced as the facts in *Payne* are distinguishable. Payne's case was tried by a jury, which found him guilty of the underlying offenses. At sentencing, the court enhanced the

defendant's sentence based on the court's findings - from the testimony presented - that Payne caused physical harm in his prior conviction and serious physical harm in his current conviction, per the former RVO statute. *Id.* at ¶107-108. Payne did not waive the jury as to the specification and *did not stipulate to the necessary findings*, and this court properly held the trial court's fact-finding regarding his prior and current convictions violated *Apprendi*. *Payne* at ¶114.

[*P94] In contrast, here, appellant pled no contest to robbery *and the specification, thus waiving the jury as to both*, and *admitted all facts necessary for the RVO specification* as recited in the prosecutor's statement of facts. Before pleading, appellant told the court he would be admitting (1) the facts alleged in the indictment and (2) the facts to be presented by the prosecutor. Before hearing from the prosecutor, the court advised appellant, and he said he understood, that "there needs to be a finding, which would be today, that you threatened serious physical harm to the victim * * *." After the court notified him of this element, appellant said he was (1) voluntarily pleading no contest to robbery and the specification and (2) *asking the court to accept his plea.*

[*P95] Then, during the prosecutor's statement of facts, he said appellant handed the robbery note to the teller. In that note, appellant informed her that he had a loaded gun on him and indicated he would hurt her with it unless she followed his demands. *After hearing the facts as outlined by the prosecutor, appellant admitted they were true.* He thus essentially admitted he threatened to cause the teller serious physical harm. Appellant again asked the court to accept his plea. The court then found that appellant threatened to inflict serious physical harm on the teller, thus triggering the RVO statute.

[*P96] After making this finding, the court instructed appellant to again review the plea form to *make sure he still wanted to plead* based on the court's findings and *to only sign the form if that was still his wish*. After again reviewing the form with his attorney, appellant signed it, and the court found him guilty of robbery and the RVO specification.

[*P97] Since appellant waived his right to have the jury try the specification and admitted all facts necessary to enhance his sentence as an RVO, the trial court did not commit plain error in sentencing him.

*State v. Wilson*, 2018-Ohio-902, ¶¶ 34-97, 108 N.E.3d 517, 524-530 (Ohio Ct. App. Mar. 12, 2018) (emphasis in original).

## II. Procedural History

### A.   Conviction

On June 1, 2015, a Lake County Grand Jury issued a three-count indictment charging Wilson with: 1) one count of aggravated robbery in violation of Ohio Revised Code (O.R.C.) § 2911.01(A)(1) with a repeat violent offender (RVO) specification, 2) one count of robbery in violation of O.R.C. § 2911.02(A)(2) with an RVO specification, and 3) one count of receiving stolen property in violation of O.R.C. § 2913.51(A). (R. 8-1, Exh. 1).

On June 5, 2015, Wilson, represented by counsel, entered a plea of not guilty. (R. 8-1, Exh. 2).

On October 19, 2015, Wilson withdrew his former plea of "not guilty" and entered a plea of no contest to the robbery charge in Count Two, including the RVO specification (R. 8-1, Exh. 3). After advising Wilson of his legal rights regarding trial and prosecution and finding that Wilson understood his rights, the trial court accepted Wilson's plea, and found him guilty of robbery, including the RVO specification. (R. 8-1, Exhs. 4 & 25). As part of the plea, at the time of sentencing, the State agreed to move to dismiss the remaining counts of the indictment. (R. 8-1, Exh. 4).

On October 26, 2015, prior to sentencing, Wilson, *pro se*, filed motion to dismiss counsel and motion to withdraw his plea, requesting an oral hearing for both motions. (R. 8-1, Exhs. 5 & 6). The State filed a response. (R. 8-1, Exh. 7).

On November 20, 2015, Wilson filed an Amended Motion to Dismiss Indictment after having previously filed a similar motion on November 9, 2015. (R. 8-1, Exh. 8).

On January 4, 2016, the trial court held a hearing to address Wilson's *pro se* Motions:

10

This day, to-wit: January 4, 2016, came the Lake County Prosecuting
Attorney, Charles E. Coulson, by and through Charles F. Cichocki, Assistant
Prosecuting Attorney, on behalf of the State of Ohio, and the Defendant, Dawud
Wilson, being in Court and represented by counsel, Cory R. Hinton, Esquire, this
matter came on for hearing on various motions filed *pro se* by the defendant, to
wit: Motion to Withdraw Plea, filed 10/26/2015; Motion to Dismiss Indictment,
filed 11/09/2015; Amended Motion to Dismiss Indictment, filed 11/20/2015; and,
Request for Bill of Particulars, filed 11/20/2015.

After consultation with his counsel, the Defendant in open court and on
the record orally withdrew all of the afore-referenced motions and request.

(R. 8-1, Exhs. 10 & 26).

On January 22, 2016, the trial court imposed an aggregate sentence of ten years

imprisonment—eight years for robbery as found in Count Two and an additional two-year

sentence for the accompanying RVO specification. (R. 8-1, Exh. 11). Pursuant to the plea

agreement, all remaining counts of the indictment were dismissed. *Id.*

**B. Direct Appeal**

On April 28, 2016, Wilson, through counsel, filed a motion for leave to file a delayed

appeal, which the state appellate court granted. (R. 8-1, Exhs. 13 & 14).

Wilson raised the following assignments of error:

1. The trial court erred by denying the Defendant-Appellant's motion to
   suppress in violation of his due process rights and rights against
   unreasonable search and seizure as guaranteed by the Fourth, Fifth and
   Fourteenth Amendments [sic] to the United States Constitution and
   Sections 10 and 14, Article I of the Ohio Constitution.

2. The trial court erred to the prejudice of the Defendant-Appellant when it
   sentenced him to an additional and consecutive two years in prison for a
   repeat violent offender specification.

3. The trial court erred by sentencing the Defendant-Appellant to a
   maximum, eight-year prison sentence for robbery.

(R. 8-1, Exh. 15).

On March 12, 2018, the state appellate court overruled all three assignments of error and affirmed the judgment of the common pleas court. *Wilson*, 2018-Ohio-902 at ¶107.

On April 25, 2018, Wilson, through counsel, filed a notice of appeal with the Ohio Supreme Court. (R. 8-1, Exh. 18). Wilson set forth one proposition of law:

1. A Repeat Violent Offender-enhanced sentence to a charge of robbery violates a defendant's constitutional rights to due process and trial by jury where a trial court makes factual findings regarding the RVO following a no contest plea to an indictment that does not include the requisite "serious physical harm" language and the defendant not only does not admit to threatening serious physical harm but also challenges such a finding.

(R. 8-1, Exh. 19).

On July 5, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 8-1, Exh. 21).

## C.    Federal Habeas Petition

On September 5, 2018, Wilson, *pro se*, filed a Petition for Writ of Habeas Corpus. Petitioner raises one grounds for relief:

**GROUND ONE:** The trial court violated petitioner's Fourth Amendment rights to due process and trial by jury when it engaged in unconstitutional judicial factfinding, with respect to the "serious physical harm" element, and sentenced petitioner to an enhanced sentence of two additional years for the repeat violent offender (RVO) specification.

*Supporting Facts*: In a second degree felony of violence, the "serious physical harm" element is an essential element to be proven by a jury before a trial court may sentence a defendant to an enhancement RVO sentence. Where the indictment does not contain the "serious physical harm" element, and the defendant does not stipulate to or admit that the crime contained the "serious physical harm" element (when the defendant pleads guilty or no contest), this element must be tried and proven by a jury before a trial court may sentence a defendant to additional RVO time.

In this case, neither the indictment nor the State's recitation of facts (prior to trial court's colloquy and defendant's pleading of no contest to the robbery) contained the "serious physical harm" element. The trial court then proceeded to engage in

12

fact-finding to find that the crime involved a threat of serious physical harm and sentenced petitioner to the maximum statutory limit for a second degree felony (8 years) plus an additional two year enhancement sentence (ran consecutively) for the RVO specification for an aggregate of 10 years in prison.

(R. 1, PageID# 7-8).

### III. Exhaustion and Procedural Default

#### A.   Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

#### B.   Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally

default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A

14

petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements, however, are not enough—a petitioner must "support his allegations of

constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent argues that Petitioner's sole constitutional ground for relief is the assertion that the trial court erred in sentencing him to the RVO specification in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296, (2004). (R. 8, PageID# 48). The court agrees that this argument is the only federal constitutional claim raised by the petition. Respondent further avers that this ground for relief "was procedurally defaulted due to [Petitioner's] failure to contemporaneously raise it during his trial court proceedings, and the appellate court's enforcement of his forfeiture in direct review." (R. 8, PageID# 48).

Respondent asserts that the first element of the *Maupin* test is satisfied as Petitioner allegedly failed to comply with an applicable state procedural rule—the contemporaneous objection rule. Petitioner disagrees, and points to an objection raised by his counsel at sentencing. (R. 14, PageID# 394). The state appellate court, however, found that Petitioner failed to raise an *Apprendi* argument in the trial court, conceded that he did not raise such an argument at the plea hearing, and, therefore waived it. *Wilson*, 2018-Ohio-902 at ¶84. As a result, the state appellate court limited its review to plain error. *Id.*

Indeed, Petitioner did not expressly raise an *Apprendi* argument *at sentencing*, but he did raise a similar argument, as defense counsel stated:

> I would like to be heard as to the repeat violent offender specification. As the Court is well aware there are certain elements that have to be met for the repeat violent offender specification to come into play and for the Defendant to be

16

sentenced on that. And one of those elements is that the offense involved, an attempt to cause or a threat to cause serious physical harm to a person. It's our position that that particular element did not take place in this case.

(R. 8-1, Exh. 26, PageID# 339). However, the state appellate court is correct that no such argument was raised at the plea hearing, where, even according to Petitioner's appellate brief in state court, defense counsel conceded that: "Mr. Wilson is aware that this specific issue was not presented in the lower court. Thus, he brings it before this Court under plain error." (R. 8-1, Exh. 15, PageID# 137).

Further, even if Petitioner's argument during sentencing could be construed as raising an *Apprendi* argument, it can reasonably be inferred that the state appellate court found that the challenge should have come at the plea hearing and not the sentencing hearing. Indeed, at sentencing, defense counsel was not really arguing a sentencing issue or the permissible range of sentences for someone who had been convicted of an RVO specification, but rather he was challenging the guilt finding of the RVO itself by arguing that "certain elements" of the RVO specification were not satisfied. Clearly, such an objection then was not contemporaneous as it was not raised at the plea hearing, but rather at the sentencing hearing.

Finally, although Petitioner believes that the state appellate court's finding—that he did not raise a contemporaneous objection—is "simply not true" (R. 14, PageID# 394), this court cannot overrule a state court's interpretation of state law. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and *rules of practice* of that state.") (emphasis added); *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) ("[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.") (citations omitted); *Brooks v. Anderson*, 292 Fed. App'x 431, 437 (6th Cir. 2008) (finding that habeas courts "must

defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition."). This court cannot, under the facts and circumstances of this case, second-guess the state appellate court's finding that Petitioner failed to raise a timely objection to the state court's finding of guilty of the RVO specification. By performing only a plain error review of this issue, the state appellate court actually enforced the state procedural sanction, thereby satisfying the second prong of *Maupin*. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6ᵗʰ Cir. 2001) ("we view a state appellate court's review for plain error as the enforcement of a procedural default") (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6ᵗʰ Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.")

Turning to the third prong of *Maupin*, the Sixth Circuit Court of Appeals has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *See e.g,. White v. Mitchell*, 431 F.3d 517, 525 (6ᵗʰ Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 635 (6ᵗʰ Cir. 2003) (citing *Hinkle*, 271 F.3d at 244 ("We have held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.") (*citing Scott v. Mitchell*, 209 F.3d 854, 867-68 (6ᵗʰ Cir. 2000)).

The only remaining consideration under *Maupin* is whether Petitioner has demonstrated both "cause" and "prejudice" to excuse his default. To establish "cause," Wilson must show that "something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), *abrogated in part by*

*Martinez v. Ryan*, 566 U.S. 1 (2012); *accord Wade v. Timmerman-Cooper*, 785 F.3d 1059 (6th

Cir. 2015). Petitioner has failed to present any cause to excuse his procedural default. Moreover,

though he has not raised such an argument, Petitioner cannot claim the alleged ineffective

assistance of counsel caused his default. *See Wade*, 785 F.3d at 1077 ("Ineffective assistance of

counsel can constitute 'cause' and 'prejudice' in this context, but the claim of ineffective

assistance itself must have been fairly presented in the state courts or it too is subject to

procedural default.") (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Petitioner has not

raised any claim of ineffective assistance of counsel in the state courts. Thus, he has failed to

establish any cause to excuse his procedural default. Because he has not demonstrated cause to

excuse the default, the court need not consider the "prejudice" prong of the procedural default

analysis of this claim. *See, e.g., Simpson v. Jone*s, 238 F.3d 399, 409 (6th Cir. 2000).

Consequently, the court finds that Wilson's sole ground for relief is procedurally

defaulted and recommends that it be dismissed.

### IV. Conclusion

For the foregoing reasons, it is recommended that Wilson's Petition be DISMISSED as

procedurally defaulted.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: October 26, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**